UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMOND EARL GOINS, #562452,

          Petitioner,

v.                                CASE NO. 10-CV-12389
                                HONORABLE NANCY G. EDMUNDS

THOMAS BIRKETT,

          Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.**     **Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Demond Earl Goins ("Petitioner") was convicted of felony murder following a jury trial in the Wayne County Circuit Court and was sentenced to life imprisonment without the possibility of parole in 2005.  In his petition, he raises claims concerning the sufficiency of the evidence, the jury instructions, the denial of his right to testify, and the effectiveness of trial and appellate counsel.  For the reasons set forth, the Court finds that Petitioner is not entitled to habeas relief on his claims and denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.**     **Facts and Procedural History**

Petitioner's conviction arises from the shooting death of Dietrich Davis outside a liquor store in Detroit, Michigan on November 14, 2004.  Petitioner's co-defendant, Brian Doss, was the shooter and Petitioner took the victim's black leather coat.  The Court adopts

the statement of facts provided by defense counsel on direct appeal, to the extent those

facts are consistent with the record.  Those facts are as follows:

> Elaine Goolsby testified that Dietrich Davis was her son and that Hoover Market is six blocks from her home. On November 14. 2004. he came to visit her for her birthday. Later, he went to the store to get her a beer. He was wearing a fur lined black leather coat and drove an orange Chevrolet Avalanche. She later received a call from the hospital informing her that her son had been shot.  When she arrived, he was already deceased. She identified his body at the morgue. About three or four days later, her son's death was the subject of a television newscast, providing his name, the location of his death and the fact that his coat was taken. (T2 24-30).

> Detroit Police Officer Adriane Ellis stated that at 8:30 p.m., November 14, 2004, she was working with her partner, Officer Hamood. They were at Sturgis and Beland, which is four or five blocks from Hoover and State Fair. She heard two shots fired to the north. About a minute later, she observed a Cadillac traveling at a very high rate of speed southbound on Beland. The car was burgundy and contained three or four occupants. As they were leaving their location, they were flagged down at East State Fair and Hoover. Based upon information she received from that person, they proceeded to the Hoover Market, where she observed a black man lying in front of am orange Chevrolet Avalanche, She received the run from dispatch as she arrived. Medics were summoned and the scene was preserved. She reviewed the store security video tape, which recorded the presence of the truck and a burgundy car. (T2 31-61).

> Darryal Brown stated that he knows Appellant, Doss and [Otis] Clark. At 7:30 or 8:00 p.m., November 14, 2004, Doss and Appellant arrived at his home in a burgundy Ford Taurus owned by Doss' girlfriend, Carol. They purchased beer and liquor. which they drank as they went to pick up Otis Clark from work. After Clark was on board, they stopped at another store, where Clark purchased more alcohol. They rode around drinking before stopping at a store on Hoover. All four exited the vehicle. He and Clark remained in the area of the car. Appellant and Doss approached the store. He heard shots, looked up and saw Appellant and Doss return to the car from the area of a truck and the legs of a person laying in front of the truck. Appellant held a coat. Doss had a .38 in his hand. When they were back in the car, Clark told Doss "Don't be putting me in no stuff like that." Doss replied "He's straight," indicating that he had only wounded the man. Afterwards, they went to a gas station. Brown went in to purchase gum. When he returned to the car, he heard Doss and Appellant argue over the coat. According to Brown, Appellant sought to keep the coat because he took it. Doss thought he should keep it because he shot the man. Doss ended up with the coat. Doss also complained that the money he had taken from the man was only enough to purchase beer and cigarettes. From there, Clark and then Brown were

driven home. Prior to the shooting, Brown never heard any talk of plans to shoot anybody or to commit a robbery. (T2 62-85, 100-117).

Detroit Police Sergeant Eddie Croxton was dispatched to the 19934 Hoover homicide scene. He confiscated a security videotape, took it to police headquarters and turned it over to Sergeant Jenkins, the officer in charge of the case. (T2 86-89).

Detroit Police Officer Jamal Hamood stated that at 8:30 p.m., November 14, 2004, he was on duty with his partner, Adriane Ellis. They were on patrol at Sturgis and Beland when he heard two or three gunshots from the north. As they headed north on Beland, he saw a burgundy Cadillac with four occupants pass them going southbound at a high rate of speed. As they continued north, they received a 911 call reporting shots fired in the area of State Fair and Hoover and were flagged down by a citizen who directed them to the market. At the scene, he observed a man laying on his back with what appeared to be gunshot wounds to his chest. He detected a slight pulse and contacted EMS. Inside the store, he spoke with the owner and learned that video surveillance had been in effect. He rewound and reviewed the tape. (T2 90-94).

Detroit Police Sergeant John Jenkins stated that he was the officer in charge of the case, and that he received the store surveillance video from Sergeant Croxton. He submitted the video to the State Police to make a copy and still photographs. (T2 95-98).

Otis Lee Clark testified on November 14. 2004, he knew Doss and Appellant from his neighborhood. He also knew that Doss drove his girlfriend Carol's red Ford Taurus. Clark worked that afternoon at a car wash on Eight Mile Road and Gratiot. At 7:15 or 7:20 p.m., Doss, Appellant and Brown picked him up from work in the Taurus. They were drinking alcohol. Clark got in the car. They went to a liquor store. Clark purchased more alcohol. They continued to drink and drive around, eventually parking at a liquor store on Hoover at State Fair. When an orange Chevrolet Avalanche entered the lot, Doss looked over to Appellant ans said "This the one." After the truck parked, Doss and Appellant exited the car and approached the truck. As Clark approached the store, he observed Doss lift what appeared to be a gun, say to the man "You know what I want" and then shoot him. The man fell. Doss shot the man again. Appellant ran to the car with the man's coat. Doss appeared to check the man's pockets before returning to the car. He drove to a gas station, where Appellant asked Doss "what did we get off the guy?" Doss replied that he got only $5.00 or $6.00. Doss then gave Appellant the money in exchange for the coat. Doss then drove Clark home. During the time that he was in the car. Clark never heard Doss indicate that he intended to commit a robbery. A week later, he reported the shooting to Crime Stoppers. Approximately three months later, he was contacted by Detroit Police Detective Dale Collins. (T2 118-162).

Detroit Police Officer Ryan May arrived at the scene with his partner, Officer Anthony Murray. Officers Ellis and Hamood were already present, along with a couple of homicide sergeants. After checking the victim for a pulse, he spoke with the store owner and stood by the truck to preserve the scene as the body was removed and evidence technicians arrived. (T2 164-181).

Assistant Wayne County Medical Examiner Boguslaw Pietak was qualified as an expert in forensic pathology. He stated that on November 15, 2004, he performed an autopsy on Dietrich Davis. External examination found two gunshot wounds to the left chest. One proceeded through the fourth intercostal space, perforated the heart and left lung and fractured the sixth left rib into the back muscles, where a bullet was recovered, The other entered the eleventh intercostal space, perforated the diaphragm and abdominal cavities, lacerated the left kidney, fractured the first lumbar vertebra and traveled into the spinal canal, where a bullet was recovered. Toxicology was positive for a .06 alcohol level but negative for all other tested drugs and medications. Dr. Pietak determined the cause of death as multiple gunshot wounds and the manner of death as homicide. (T3 5-50).

Hani Yatoma stated that at 8:45 p.m. November 14.2004 he was working at the Hoover Market when he heard a shot. Four or five seconds later, he heard another shot. People entered the store and reported the shooting. He called 911. Police arrived five to ten minutes later. They monitored the store security video. He provided them with the surveillance tape. (T3 51-61).

Carol Cruz stated that she was dating Doss, that she knew Appellant and Clark as friends of Doss, and that she owned a 1995 Ford Taurus which she permitted Doss to drive. Cruz stated that on November 14, 2004, she was sick, and did not recall Doss using her car that day. He did not have a set of keys to her car, but it was well known in her neighborhood that her car would start without a key. She stated that she did not see Doss with a handgun or a fur lined leather coat. (T3 62-71).

Detroit Police Officer Anthony Murray and his partner, Officer Ryan May, were on patrol. Between 8:30 and 9:00 p.m. they were called to the Hoover Market on a report of a shooting. When they arrived, Officers Ellis and Hamood were already present. After helping the complainant into the ambulance, he entered the store, spoke with the store owner and viewed the security tape to get a description of the cars and the subject and to see what took place. He reported that the incident involved three black males between the ages of 20 and 27 and a burgundy Cadillac. (T3 72-100).

Sergeant Jenkins resumed his testimony, stating that he also collected two spent bullets recovered from the decedent by the medical examiner, which he delivered the rounds to the Firearms Unit for laboratory analysis. He also placed in evidence a $20.00 bill, jewelry, clothing and a 2003 Chevrolet

4

Avalanche. He stated that he found it strange that money and jewelry were located on the person of a person alleged to be the victim of a robbery. (T3 102-139).

Detroit Police Officer Stephanie Sparks is an evidence technician. She drew a sketch and took photographs the scene, which she used to describe the scene to the jury. She also collected a cellular telephone found under the truck. (T3 140-164).

Detroit Police Officer Dattahn Wade stated that he and his partner, Officer Keith McCloud, were dispatched to St. John's Hospital to obtain a chart and condition for the person just shot. He was advised that the complainant had been pronounced dead on arrival. Wade took possession of Davis' boots, earring, $20.00 bill, watch, white tank top, black jeans and brown belt, which he transported to Homicide. (T3 165-180).

Detroit Police Officer David Pauch was qualified as an expert in firearms identification and tool mark examinations. He received two spent bullets from Sergeant Jenkins, which he classified as .38 special caliber and determined that both were fired from the same weapon. (T3 181-187).

Outside the presence of the Doss jury, Detroit Police Investigator James Fisher testified that on March 13, 2005, he came in contact with Appellant, who was in custody, and advised Appellant of the purpose of the interview and his constitutional rights. Appellant then stated that he went to a store with Brian Doss, Otis Clark in Doss' girlfriend's burgundy Ford Taurus. They were drinking in the parking lot for half an hour when Doss stated that he was going back into the store to purchase more alcohol. He and Doss exited the car. Doss approached a man exiting a truck and said "What's up. nigga?" as though he knew the man. He then pulled a black short barreled .38 revolver, said "Nigga, you know what I want." He shot the man twice and ordered Appellant to take the man's black leather coat. When they returned to the car, Appellant gave Doss the coat. Doss then drove him home. He did not report the incident because he had heard that Doss had threatened to kill anyone who said anything. The Doss jury then returned to the courtroom. Fisher concluded Appellant's statement, which provided "I knew it was a robbery when Brian shot him, but I didn't know before that." (T3 188-200).

* * *

In the presence of both juries, Detroit Police Sergeant Eddie Croxton testified on November 14, 2004, he was called to the shooting scene to investigate the homicide. He arrived with Officer Kibler, conferred with Officers Hamood and Ellis and canvassed the area. Inside the store, he spoke with two clerks, became aware of and viewed the surveillance video. He confiscated the video and received information about the victim from Officer Wade, who knew the man personally. An evidence technician was called to collect

5

evidence. The victim's truck was impounded. Based upon his review of the tape, Croxton surmised that the shooting was "a hit.'" (T4 145-191).

Detroit Police Investigator Dale Collins stated that he received from the complainant's brother information regarding a person who was present during the shooting. He met with Otis Clark, and later had contact with Darryal Brown, Appellant and Doss. He received statements from Clark, Brown and James Klein. (T4 193-205).

\* \* \*

Following [the] waiver of remaining witnesses, (T3 201-202), the People rested. (T4 208).

\* \* \*

Appellant's motion for directed verdict was heard and denied. (T5 5-9). The Defense rested.

App. Brf., pp. 2-8 (testimony taken outside the presence of Petitioner's jury omitted). At the close of trial, the jury convicted Petitioner of felony murder. The trial court subsequently sentenced him to life imprisonment without the possibility of parole.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals asserting that the prosecution presented insufficient evidence to support his felony murder conviction. The court denied relief and affirmed Petitioner's conviction. *People v. Goins*, No. 266830, 2007 WL 1094422 (Mich. Ct. App. April 12, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Goins*, 480 Mich. 859, 737 N.W.2d 748 (2007).

In 2008, Petitioner filed an initial petition for a writ of habeas corpus in federal court raising several claims of error. The Court summarily dismissed that petition without prejudice for failure to fully exhaust state court remedies. *Goins v. Michigan Dep't of Corrections*, No. 08-CV-10520 (E.D. Mich. Feb. 12, 2008).

Petitioner then returned to state court and filed a motion for relief from judgment raising the same claims now presented on habeas review. The trial court denied the

6

motion, ruling that the insufficient evidence claim had been denied on direct appeal and further review was barred by Michigan Court Rule 6.508(D)(2), that Petitioner had failed to provide authority for his other claims, and that he had failed to establish cause and prejudice under Michigan Court Rule 6.508(D)(3) for not raising those claims on direct appeal of his conviction. *People v. Goins*, No. 05-003139-02 (Wayne Co. Cir. Ct. Sept. 12, 2008) (unpublished).  Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Goins*, No. 291096 (Mich. Ct. App. Sept. 3, 2009) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied.  *People v. Goins*, 485 Mich. 1126, 780 N.W.2d 261 (2010).

Petitioner thereafter instituted this habeas action, raising the following claims:

I.     The evidence was insufficient to support his felony murder conviction.

II.    The jury instructions were erroneous and denied him a fair trial.

III.   He was denied the right to testify.

IV.    Trial counsel was ineffective for failing to prepare him to testify, for failing to raise a duress defense, for failing to challenge the jury instructions, and for failing to properly cross-examine witnesses and argue his case.

V.     Appellate counsel was ineffective for failing to raise issues on direct appeal.

Respondent has filed an answer to the petition contending that it should be denied because the  claims are barred by procedural default and lack merit.  Petitioner has filed a reply to that answer.

7

III.    **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

case because Petitioner filed his petition after the AEDPA's effective date.  *See Lindh v.*

*Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal law, as
>        determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence presented in the
>        State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set

of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540

U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas

court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts of petitioner's

case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413);

*see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's

application of [Supreme Court] precedent 'unreasonable,' the state court's decision must

8

have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)

9

(noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**V.**     <u>**Discussion**</u>

    A.     <u>Insufficient Evidence Claim</u>

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his conviction for felony murder as an aider and

abettor.  The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal court must view this standard through the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Accordingly, "[t]he mere existence of sufficient evidence to convict ... defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder.  MICH. COMP. LAWS § 750.316.  The elements of felony murder are:  (1) the killing of a human being, (2) with the intent to kill, to do great

11

bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute. *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003) (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)). The facts and circumstances of the killing, including the use of a deadly weapon, may give rise to an inference of malice. *Id.* Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense. *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993).

To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement. *Carines*, 460 Mich. at 759; *see also People v. Moore*, 470 Mich. 56, 67-68, 679 N.W.2d 41 (2004). An aider and abettor's state of mind may be inferred from the circumstances. *Carines*, 460 Mich. at 759.

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Petitioner's felony murder conviction. The court explained, in relevant part:

> The evidence showed that defendant Doss was armed with a handgun and shot the victim. Defendant Goins admitted to taking the victim's jacket after he was shot. Defendant Goins argues that even if the jury believed that he willingly took the victim's coat, the evidence did not create a fair inference that he knew, before the larceny, that defendant Doss was armed and intended to commit a robbery, or that he participated in the offense with the requisite malice for felony murder. However, the evidence contradicts

12

defendant's argument. Defendants Doss and Goins were in a vehicle in a parking lot with Otis Clark and Darryal Brown before the shooting. According to Clark, when the victim drove his vehicle into the parking lot, defendant Doss told defendant Goins, "This is the one." Afterward, defendants Doss and Goins both exited the vehicle and approached the victim. This evidence was sufficient to support an inference that defendant Goins was aware that defendant Doss had targeted the victim and knowingly assisted defendant Doss in a plan to rob him.

Furthermore, although defendant Goins indicated in his police statement that defendant Doss was wearing a coat, suggesting that any gun he had was hidden in the coat, Clark testified that defendant Doss was not wearing a jacket, and a videotape of the crime taken by a store security camera verified that defendant Doss was only wearing a t-shirt and no jacket. Viewed most favorably to the prosecution, this evidence allowed the jury to infer that defendant Doss did not conceal the handgun as defendant Goins implied, so defendant Goins assisted defendant Doss knowing he was armed.

Additionally, after the crime was committed, the group drove to a gas station and, according to Clark, defendant Goins asked defendant Doss what they had obtained from the victim. Defendant Goins wanted to keep the victim's coat, but then agreed to give it to defendant Doss, but defendant Goins kept some money that was taken from the victim. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendants Doss and Goins were acting together and that defendant Goins was acting with wanton and willful disregard of the likelihood that their actions would cause death or great bodily harm to the victim.

*Goins*, 2007 WL 1094422 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial testimony, viewed in a light favorable to the prosecution, established that Petitioner aided and abetted the co-defendant in committing the crime. The testimony and the surveillance video established that he knew that his co-defendant was armed and intended to rob the victim, that he and the co-defendant exited their vehicle and approached the victim together, that he and the co-defendant argued over and split the proceeds from the crime, and that he possessed the requisite intent to support his conviction for aiding and abetting felony murder.

13

Petitioner essentially challenges the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable.  The trial testimony and evidence, viewed in a light most favorable to the prosecution, established Petitioner's guilt of felony murder beyond a reasonable doubt. More importantly, for purposes of federal habeas review, this Court cannot say that the Michigan Court of Appeals' ruling to that effect was unreasonable.  Habeas relief is not warranted on this claim.

B.    Procedural Default of Claims

Respondent contends that Petitioner's claims concerning the jury instructions, the right to testify, and the effectiveness of defense counsel are barred by procedural default because Petitioner first raised those claims on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th

Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner exhausted these claims in the state courts in his motion for relief from judgment and related appeals. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D) in addressing these claims, concluded that Petitioner had not shown cause or actual prejudice under Michigan Court Rule 6.508(D)(3), and noted that his rights had been protected under the state and federal constitutions. Accordingly, Petitioner's claims concerning the jury instructions, the right to testify, and the effectiveness of trial counsel are procedurally defaulted.

15

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his procedural default.   In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).   In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690.   Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689.   The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).   The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by

16

> a client would disserve the … goal of vigorous and effective advocacy ….
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate arguments on direct appeal concerning the sufficiency of the evidence to support Petitioner's felony murder conviction. Such a claim, although ultimately unsuccessful, was substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the claim raised by appellate counsel on direct appeal. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

17

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that it would find that the defaulted claims lack merit for the reasons stated by Respondent in the answer to the petition, *see* Answer, pp. 6-9, and as further discussed *infra*.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

C.     Merits of Defaulted Claims

1.     Jury Instruction Claim

Petitioner asserts that the trial court erred in instructing the jury by failing to make clear that he could not be guilty of felony murder if he only assisted the co-defendant after the shooting. Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Thus, in order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are

18

undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the trial fundamentally unfair. *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury misapplied the instruction. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).

The failure to give an instruction supported by the evidence does not automatically warrant habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. *Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). The failure to instruct is not unfair when the instructions as a whole adequately present the defense theory to the jury. *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 71-72.

The jury instructions in this case were not erroneous, confusing, or unconstitutional. The trial court clearly instructed the jury about the elements of felony murder, the concepts of aiding and abetting and mere presence, and other relevant matters. Petitioner's claim that the trial court did not inform the jurors that the prosecution must prove that he aided and abetted the co-defendant before or during the crime is belied by the record. The court specifically instructed the jury as follows:

> To prove this charge, the prosecution must prove each of the elements beyond a reasonable doubt. First, that the alleged crime was actually committed either by the defendant, Mr. Goins, or someone else; and again, it does not matter whether anyone else has been convicted of that crime. Second, that *before or during* the crime, the defendant did something to assist in the commission of that crime. And third, that the defendant must have intended the commission of that crime alleged or must have known that the other person intended its commission at the time of the giving of the assistance. It does not matter how much help, advice, or encouragement the defendant, Mr. Goins, gave. However, you must decide whether the defendant intended to help another commit the crime and whether his help, advice, or encouragement actually did help, advice, or encourage the crime. Even if the defendant, Mr. Goins, knew that the alleged crime was being planned or being committed, the mere fact that he was present when it was committed is not enough to prove that he assisted in the commission of that crime.

10/11/05 Trial Tr., p. 50 (emphasis added).  The trial court's instructions were sufficient to satisfy due process.  Habeas relief is not warranted on this claim.

### 2.    Denial of Right to Testify Claim

Petitioner next asserts that he was denied the right to testify at trial.  It is well-established that a criminal defendant has a constitutional right to testify on his own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir.1997).  "However, it has been held that a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary ... to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'"  *McCoy v. Bock*, No. 01-10052, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2d Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).  As the Sixth Circuit has explained:

20

Indeed, '[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.'  To the contrary:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel.  At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) (citations omitted) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)).

In this case, Petitioner makes only a bald assertion that trial counsel precluded him from testifying at trial.  Petitioner does not present any evidence, other than his own assertions, which shows that he was misled or believed he was not allowed to testify. "[D]efense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide."  *Webber*, 208 F.3d at 550-51.  As noted, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. If the defendant fails to do so, waiver is presumed.  *Id.* at 551.  Petitioner did not attempt to testify at trial nor notify the court of his desire to do so.  Waiver of the right to testify is therefore presumed – and Petitioner has not rebutted the presumption.  Habeas relief is not warranted on this claim.

### 3.   Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing prepare him to testify, for failing to raise a duress defense, for failing to challenge the jury instructions, and for failing to sufficiently cross-examine witnesses and argue his case.   As noted, Supreme Court has set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.   First, a petitioner must prove that counsel's performance was deficient.   This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.   *Strickland*, 466 U.S. at 687.   Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.   *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.   *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.   *Id.* at 689.   Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.   *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.   *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   A reasonable probability is one that is sufficient to undermine confidence in the outcome.   *Id.*   "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined

22

the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

Petitioner asserts that counsel was ineffective for failing prepare him to testify, for failing to raise a duress defense, for failing to challenge the jury instructions, and for failing to sufficiently cross-examine witnesses and argue his case. Petitioner, however, has failed to provide a sufficient factual or legal basis for these claims. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing).

Moreover, Petitioner has failed to establish that trial counsel erred and/or that he was prejudiced by counsel's performance. First, Petitioner has not shown that counsel erred in failing to prepare him to testify (or advising him not to testify) at trial. When a

tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000).  On habeas review, a federal court maintains "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client."  *Hodge*, 579 F.3d at 639 (internal citation omitted).  To overcome this presumption, a habeas petitioner must present record evidence that he somehow alerted the trial court about his desire to testify. *Id.*  The record in this case is devoid of such evidence.   Petitioner has not overcome the presumption that he agreed with counsel's advice not to testify, nor has he shown that counsel's advice not to testify was unreasonable. *See Gonzales*, 233 F.3d at 357.  Petitioner has also failed to establish that he was prejudiced by counsel's conduct in this regard.  He has not provided details of his proposed testimony nor shown that his testimony would have benefitted his defense.  *See Hodge*, 579 F.3d at 641 (defendant did not demonstrate prejudice arising from failure to testify at murder trial where he did not provide the substance of his testimony and merely speculated that his testimony would have impacted the jury's view of certain witnesses' credibility and his involvement in the crime).

Second, Petitioner cannot establish that counsel erred by failing to present a duress defense.  Although he claims that counsel could have asserted duress as a defense, he is mistaken.  Under Michigan law duress cannot excuse a homicide or any criminal activity that leads to the death of another person.  *See, e.g., People v. Etheridge*, 196 Mich. App. 43, 56, 492 N.W.2d 490 (1992) (duress defense not available where defendant charged with premeditated and felony murder); *People v. Travis*, 182 Mich. App. 389, 392, 451 N.W.2d 641 (1990) (duress not a defense to homicide); *see also Gimotty v. Elo*, 40 F. App'x 29, 32-33 (6th Cir. 2002).  Similarly, Petitioner cannot establish that trial counsel

24

erred by failing to challenge the jury instructions as those instructions were proper. Defense counsel cannot be deemed defective for failing to make a futile argument or objection. *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner has also not shown that counsel failed to sufficiently cross-examine witnesses or argue his case. The record reveals that counsel questioned the witnesses about their versions of events and attempted to highlight testimony that Petitioner was upset about the shooting and that he and the co-defendant did not discuss plans to rob or shoot anyone before the incident. Counsel also made reasonable arguments in support of Petitioner's defense that he did not possess the requisite intent for aiding and abetting felony murder. Petitioner has failed to explain, with any specificity, what more counsel could have done which would have benefitted his case or affected the outcome at trial. Simply put, he has not shown that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

D.    Ineffective Assistance of Appellate Counsel Claim

Lastly, Petitioner asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal. Petitioner is not entitled to relief on any such claim. As explained *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is not warranted on this claim.

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

25

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37. When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional rights as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling. Accordingly, the Court **DENIES** a certificate of appealability. The Court further **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal as any appeal could not be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

26

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 9, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 9, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager